UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| DESHANE REED, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | 1:13-cv-01174-SEB-DML |
| MARION SUPERIOR COURT, | ) | |
| Defendant. | ) | |

**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT MARION SUPERIOR COURT**

This matter comes before us on Defendant Marion Superior Court's Motion for Summary Judgment on Plaintiff DeShane Reed's Title VII claim. Defendant filed its motion and supporting brief on August 11, 2014. [Dkt. Nos. 48, 50.] Plaintiff filed his response on August 22, 2014. [Dkt. No. 54.] Defendant filed a reply on September 5, 2014. [Dkt. No. 55.] For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**Factual Background and Undisputed Facts**

Throughout his "Statement of Material Facts in Dispute", Mr. Reed argues that certain facts are in dispute by citing somewhat related but not contradictory facts. "A proposed fact is not in dispute simply because a party lists that fact as 'disputed.'" *Cuttill v. Potter*, No. 08-2199, 2010 WL 3951959, at *5 (C.D. Ill. Oct. 6, 2010). "As a result, many of Plaintiff's responses do not adequately challenge the proposed fact." *Id.* The

Court has construed the facts and drawn all inferences in favor of Plaintiff; however, where Plaintiff did not dispute Defendant's proposed fact, the Court considers that fact to be undisputed. The following facts are undisputed unless otherwise indicated.

**Mr. Reed's Position, Job Requirements and Guidelines.**

Mr. Reed is an African American male. [Dkt. No. 50 at 3.] He began working for Defendant's Marion County Juvenile Detention Center ("MCJDC") on January 5, 2009 in the position of Superintendent of Detention Center. [*Id.*; Pltf. Depo. at 10.] Mr. Reed was provided a two-page job description for his position, titled "Marion County Classification Specification," which he signed on January 7, 2009. [Dkt. No. 50 at 3; Def. Ex. C-1.] The Classification Specification for Mr. Reed's position includes over twenty required tasks. [Dkt. No. 50 at 3; Def. Ex. C-1.] Those tasks include, but are not limited to, maintaining fair and ethical standards of discipline, working collaboratively and responsibly with Probation and other agencies, timely and accurately communicating with supervisors, and effectively communicating the Detention Center policies and procedures. [*Id.*]

Mr. Reed also received an employee manual and the Ethics Code contained in the Marion Superior Court Handbook. [Dkt. No. 50 at 3; Pltf. Depo. at 11.] On January 25, 2012, Mr. Reed electronically signed an Employee Handbook Acceptance for the Marion Circuit and Superior Courts Employee Resources Manual (2012 update). [Dkt. No. 50 at 3; Def. Ex. C-2.] No dispute exists as to the contents of the Employee Resources Manual, submitted by Defendant as Exhibit C-9, or that Mr. Reed received the Manual.

2

**MCJDC Investigation.**

In October 2012 MCJDC employee, Brandon Randall complained to Human Resources about conditions at the Juvenile Detention Center and accused his supervisor of discriminating against him on the basis of sexual orientation. [Dkt. No. 50 at 8 (citing Bova Dep. at 41).][1] In response, the Marion Superior Courts' Human Resources Director, Paige Bova Kervan, approached the presiding judge of the MCJDC, Judge Marc Rothenberg, to discuss the matter. [*Id.*] Judge Rothenberg consulted the Marion Superior Court Executive Committee ("Executive Committee"), who instructed Ms. Bova to undertake an investigation. [*Id.*; Bova Dep. at 44-45; Bova Aff. ¶ 6.]

Ms. Bova's investigation did not initially focus on Mr. Reed, but on another employee, Serena Thompson. [Dkt. No. 50 at 8; Bova Dep. at 45.] After interviewing numerous people, including current and former MCJDC employees, Ms. Bova discovered problems with Mr. Reed's job performance. [Dkt. No. 50 at 8-9.] Specifically, Ms. Bova discovered a poor working environment at the MCJDC, consisting of poor morale, high employee turnover and ethical conduct violations by Mr. Reed. [Dkt. No. 50 at 8-9 (reporting "high employee turnover rates of 100% at MCJDC and poor morale despite multiple reorganizations implemented by Plaintiff" as well as employee complaints of "bullying, a punitive management style, intimidating treatment by Plaintiff and his

---

[1] Mr. Reed retorts that: (1) Mr. Randall was accused of committing sexual harassment, (2) Mr. Randall did not file any formal charges of discrimination against the MCJDC with the EEOC and (3) Mr. Randall's claims of discrimination were unsubstantiated. [*See* Dkt. No. 54 at 2.] These alleged facts do not contradict Defendant's submission that Mr. Randall accused the MCJDC of discriminating against him on the basis of sexual orientation which prompted an HR investigation.

administration and a lack of consistency with discipline, promotions and demotions which affected morale") (citing Def. Ex. C-4).][2]

A general lack of trust of Mr. Reed and his management team was expressed by a large number of employees who recounted incidents where they believed Mr. Reed was not truthful with them. [Dkt. No. 50 at 9 (citing Def. Ex. C-5 (interview notes), Def. Ex. C-4 (Corrective Action Record; Bova Dep.)).] Mr. Reed created a poor working relationship with Juvenile Probation by implementing visitation and dress code policy changes without engaging Probation in the formulation of those policies, which caused problems with the Juvenile Probation Officers' ability to identify their clients in detention. [*Id.* at 9-10.] Mr. Reed also unilaterally implemented an Emergency Response policy which caused operational issues between Receiving, Screening and Release and Detention. [*Id.* at 10.] Mr. Reed has not disputed these proposed facts.

In addition to Mr. Reed's communication and management shortcomings, Defendant alleges that Ms. Bova's investigation revealed three occurrences of employee misconduct by Mr. Reed – all of which may have involved Ghost employment in violation of Indianapolis, IN Rev. Code §§ 291-231 (2003). First, Mr. Reed allegedly had Jonathan Jordan cut both residents' hair and Mr. Reed's hair while "on the clock" as a Youth

---

[2] Mr. Reed attempts to contradict Ms. Bova's findings in her investigation by pointing to "statements praising Reed," as well as the United States Department of Justice Civil Rights Division, Special Litigation Section's comments related to Mr. Reed's efforts to reform certain areas of the MCJDC. [*See* Dkt. No. 54 at 3.] Mr. Reed's argument that other people (i.e., not his supervisors, including the Executive Committee) may have a differing opinion about his performance as Superintendent does not undermine the findings of Ms. Bova during her investigation.

Manager. Second, Youth Manager Corey Smith allegedly changed the headlight on a personal vehicle while "on the clock" and Mr. Reed granted Mr. Smith four hours of compensatory time in return. And, third, Mr. Reed allegedly received a discounted hotel rate of $33 per night for a Jacuzzi suite at the Wyndham Hotel from former employee Ralph Island's wife. [Dkt. No. 50 at 9; Def. Ex. C-5 (interview notes); Ex. C-4 (Corrective Action Record); Bova Dep.] Mr. Reed disputes these facts, pointing to his deposition testimony and an unauthenticated statement from Mr. Jordan. [Dkt. No. 54 at 3-4.] Although Mr. Reed disputes the veracity of these allegations, he does not dispute that they were discovered by Ms. Bova during her investigation and that the Executive Committee believed them to be true.

Ms. Bova presented her investigative findings to the Executive Committee of the Court during its regularly scheduled meeting on November 16, 2012. [Dkt. No. 50 at 10 (citing Bova Aff. ¶ 8; Rothenberg Aff. ¶ 7).] After deliberating during a closed session, the Executive Committee determined that ample evidence established that Mr. Reed had extremely poor work performance issues, had violated the ethical standards of conduct, had violated various provisions of the Human Resource Manual and may have committed Ghost Employment. [*Id.*][3] The Executive Committee instructed Ms. Bova to prepare a Corrective Action Record terminating Mr. Reed's employment by January 18, 2013, or in

---

[3] Mr. Reed responds that Ms. Bova did not advise the Executive Committee that Mr. Reed denied the allegations of misconduct. [Dkt. No. 54 at 4 (citing Bova Dep. at 111).] Additionally, Mr. Reed notes that the entire Executive Committee never met with Mr. Reed, only Judge Rothenberg and Ms. Bova. [*Id.* at 4-5 (citing Reed Dep. at 18-20).] The Court assumes these facts are true, but they do not affect the veracity of the Executive Committee's findings.

5

the alternative, allowing Mr. Reed to resign by that date. [*Id.* (citing Rothenberg Aff. at ¶ 7).] Ms. Bova prepared the Corrective Action Record, which was signed by Judge Rothenberg on December 5, 2012. [Dkt. No. 50 at 10; Def. Ex. C-4; Bova Dep. at 92-93; Rothenberg Aff. ¶ 10.] Ms. Bova and Judge Rothenberg met with Mr. Reed on December 5, 2012, read the Correction Action Record and provided Mr. Reed the option to resign or be terminated. [Dkt. No. 50 at 11; Def. Ex. C-4; Pltf. Dep. at 18-20.] Mr. Reed refused to resign and his employment was terminated. [Dkt. No. 50 at 1; Pltf. Dep. at 8; Compl. ¶ 12.] Mr. Reed does not dispute these facts.

Defendant asserts that "[t]he Executive Committee did not factor race into their determination to terminate Plaintiff's employment, nor did Judge Rothenberg or Director Bova make any statements or comments to that effect." [Dkt. No. 50 at 11; Rothenberg Aff. ¶¶ 9, 11, 13; Bova Aff. ¶¶ 7, 9, 12; Pltf. Dep. at 20-21.] Specifically, Judge Rothenberg provided in his affidavit that:

> 9. At no time during Director Bova's presentation and at no time during deliberations did any Executive Committee judge make any statement or comment regarding Reed's race or race in general.
>
> . . .
>
> 11. I did not factor race into my determination to terminate Reed's employment, nor did Judges John Hanley, David Certo or Becky Pierson-Treacy make any statements or comments to that effect.
>
> . . .
>
> 13. During the December 5, 2012 meeting with Reed, neither I nor Director Bova made any statements or comments regarding Reed's race or race in general.

[Def. Ex. F.] Likewise, Ms. Bova averred in her affidavit that:

> 7. Reed's race and race in general were not a factor in my investigation.

6

> . . .
>
> 9.     At no time during my presentation to the Executive Committee did any of the judges make any statement or comment regarding Reed's race or race in general.
>
> . . .
>
> 12.    During the December 5, 2012 meeting with Judge Rothenberg and Reed, neither I nor Judge Rothenberg made any statements or comments regarding Reed's race or race in general.

[Def. Ex. C.]

Mr. Reed does not dispute these proposed facts. Instead, Mr. Reed includes additional facts in his Statement of Additional Material Facts, many of which are unsupported by the cited record evidence and are not material to the issues presented on summary judgment. Although many of these facts are irrelevant and/or misstated, the Court will not provide an analysis of the unfounded nature of Mr. Reed's contentions unless necessary below.

## Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id*. at 255. However, neither the "mere existence of some alleged factual dispute between the

parties," *Id*., at 247, nor the existence of "some metaphysical doubt as to the material facts," (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id*. at 325; *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *Celotex,* 477 U.S. at 322*; Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if

believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

## Legal Analysis

Under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, Mr. Reed contends that the Marion Superior Court terminated him in violation of Title VII because he is African American. A plaintiff may establish a case of discrimination using either the direct or indirect method of proof. Mr. Reed concedes that "he does not have direct evidence of discrimination in this case" and has chosen to proceed solely under the indirect method. [Dkt. No. 54 at 8, n.2.] As a result, we follow his lead and discuss only that method of proof as initially set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]

---

[4] Mr. Reed cites caselaw describing circumstantial evidence that creates a mosaic to support a finding of discrimination. [Dkt. No. 54 at 9-10.] The "mosaic of evidence" mentioned by Mr. Reed is used to make a case using the "direct" method of proof. *See Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 904-05 (7th Cir. 2006); *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 751, n.3 (7th Cir. 2006) ("On appeal, Ms. Burks also makes reference to showing a 'convincing mosaic of circumstantial evidence,' alluding perhaps to the direct method of proof of a discrimination claim."). Mr. Reed has already admitted that he has no direct evidence of discrimination and thus, the Court considers these arguments while applying an indirect method of proving discrimination.

9

Under the indirect method of proving discrimination, Plaintiff has the initial burden of showing "1) he was within a protected class; 2) he was performing to the employer's legitimate expectations; 3) he suffered an adverse employment action (discharge); and 4) [the employer] treated similarly situated employees of a different race more favorably." *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 639 (7th Cir. 2001); *Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir. 1997). If Plaintiff can establish his *prima facie* case by a preponderance of the evidence, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its action sufficient to support a finding that discrimination was not the motivation of the employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). At that point, the burden shifts back to Plaintiff to establish by a preponderance of the evidence that the Defendant's proffered reasons for the adverse action are pretextual. *Grigsby v. LaHood*, 628 F.3d 354, 360 (7th Cir. 2010).

1. **Plaintiff's Prima Facie Case.**

    a. **Plaintiff Is An African American Who Suffered an Adverse Employment Action, but Cannot Show that He Was Performing Defendant's Legitimate Employment Expectations.**

Both parties agree that Mr. Reed is African American and that he suffered an adverse employment action when Defendant terminated him. [Dkt. No. 50 at 11; Dkt. No. 54 at 13.] Defendant contends that Plaintiff cannot prove element two of a *prima facie* claim of discrimination: that he was performing to the Defendant's legitimate employment expectations at the time of the alleged discrimination.

Ms. Bova's investigation found that Mr. Reed "failed to maintain fair and ethical standards of discipline, did not work collaboratively and responsibly with Probation and

other agencies, failed to timely and accurately communicate with supervisors, and did not effectively communicate Detention Center policies and procedures, which in turn, caused poor morale, lack of trust and high employee turnover rates." [Dkt. No. 50 at 14 (citing Def. Ex. C-4).] Mr. Reed did not dispute these facts. These facts alone show Mr. Reed was not satisfying the requirements of his position as the MCJDC Superintendent.

In response to Defendant's facts, Mr. Reed points to evidence that individuals and entities other than Defendant applauded Mr. Reed's work at various times. For example, during Mr. Reed's tenure, the DOJ noted progress in 2011 after an investigation that identified necessary reform in 2008. [Dkt. No. 54 at 11.] Mr. Reed also cites an Indiana Department of Correction (IDOC) letter to Judge Rothenberg advising the MCJDC to be found in compliance with 100% of Mandatory Folders and 98.15% of all non-mandatory folders. [*Id.* at 11-12.] Yet, these facts do not directly respond to Ms. Bova's investigation findings and the Executive Committee's conclusion. Most significantly, neither of these reports (from the DOJ or IDOC) directly mention Mr. Reed. Moreover, these reports do not contradict Ms. Bova's findings at the time she performed her investigation. Simply, the Executive Committee's findings that Mr. Reed was not performing his job duties remain unaffected by the DOJ and IDOC reports.

Mr. Reed also points to several letters of individuals recommending Mr. Reed for future employment. None of these letters satisfy Mr. Reed's *prima facie* case to prove he was performing Defendant's legitimate employment expectations. First, none of the letters are authenticated and they contain hearsay. Thus, the letters should not be properly considered on summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir.

2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment.") (citing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible evidence will not overcome a motion for summary judgment)). Second, even if the Court considered the letters contained in Mr. Reed's Exhibit 3, at best they demonstrate that some co-workers found Mr. Reed to be effective in certain areas of his employment at certain times. Yet, none of Mr. Reed's letters dispute the fact that the Executive Committee found that Mr. Reed failed to maintain fair and ethical standards of discipline, did not work collaboratively and responsibly with Probation and other agencies, failed to timely and accurately communicate with supervisors, and did not effectively communicate Detention Center policies and procedures, which in turn, caused poor morale, lack of trust and high employee turnover rates. [Def. Ex. C-4.][5] Specifically, none of Mr. Reed's letters appear to be from Mr. Reed's supervisors or Probation or other agencies.

Defendant has set forth that Mr. Reed was not performing Defendant's legitimate employment expectations. Mr. Reed has not created a genuine issue of material fact with regard to the specific performance failures cited by Defendant. As a result, Mr. Reed has failed to demonstrate that he was performing Defendant's legitimate employment expectations and therefore did not make a *prima facie* case of discrimination.

---

[5] Moreover, no statement from Judge John F. Hanley "praising Reed" was put into evidence. Instead, Judge Hanley sent an email dated January 19, 2012 that states: "DeShane, Congratulations on the great work highlighted by both the article and the editorial in yesterday's Star. Keep up the good work." [Dkt. No. 54-3 at 3.] This email was sent ten months before Ms. Bova's investigation began.

### b. Mr. Reed Has Not Identified Any Similarly Situated Employee of a Different Race that Defendant Treated More Favorably.

Even if Mr. Reed could show that he was satisfying the legitimate expectations of Defendant, Mr. Reed has not identified any employee of a different race and similarly situated that Defendant treated more favorably. Mr. Reed argues that Brandon Randall and Sue Patterson are similarly situated to him. [Dkt. No. 54 at 12-13.][6] Mr. Reed contends that Ms. Patterson used county property for a personal purpose and was not disciplined. [*Id.* at 13] Mr. Reed also argues that Mr. Randall, a non-supervisory trainer, received several disciplinary actions, but was not terminated. [*Id.*] Mr. Reed's contentions are unsupported by admissible evidence and do not establish that Mr. Randall or Ms. Patterson is similarly situated. Consequently, Plaintiff has not made a *prima facie* case of discrimination.

A similarly situated employee for purposes of proving discrimination "must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) (internal quotation marks omitted).

> To evaluate whether two employees are directly comparable, we consider all of the relevant factors, "which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii)

---

[6] In his Response brief, Mr. Reed argues that Ms. Bova is also similarly situated. Mr. Reed did not provide this fact his written discovery in responses. [*See* Def. Ex. G at Nos. 16, 17.] Moreover, Defendant shows that Ms. Bova is the Director of Human Resources, not the Superintendent, and has different job expectations and requirements. [Dkt. No. 55 at 10.] Additionally, Mr. Reed has not demonstrated any job performance issues of Ms. Bova. We cannot find that Ms. Bova is similarly situated to Mr. Reed. Indeed, we cannot perceive any legitimate basis – factual or legal – for Mr. Reed's belated assertion that he and Ms. Bova were similarly situated.

13

were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision." "Above all, we are mindful that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions."

*Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692-93 (7th Cir. 2005) (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)).

Mr. Reed argues but without the benefit of any evidentiary citation that Brandon Randall was accused of sexual harassment and was not terminated, receiving instead his eighth disciplinary action. [Dkt. No. 54 at 12-13.] Mr. Reed contends that Ms. Bova disagreed with Mr. Reed's proposed discipline for Mr. Randall because the inappropriate conduct took place 3 to 4 months prior. [*Id.*][7] These unauthenticated, hearsay statements are inadmissible and thus beyond our purview.

Yet, even had Mr. Reed submitted evidence to support his arguments, Mr. Reed has failed to show that Mr. Randall had the same job description, was subject to the same standards, or had comparable experience, education, and other qualifications. *See Brummett*, 414 F.3d at 692-93. To the contrary, Mr. Reed admits that *he* was Mr. Randall's supervisor and *he* determined the appropriate disciplinary action for Mr. Randall. [Dkt. No. 54 at 13 ("Kervan testified that she disagreed with *Reed's* proposed discipline of Randall . . . .") (emphasis added).] Defendant has shown that Mr. Randall was a non-supervisory trainer, whereas Mr. Reed was the Superintendent of the MCJDC and the top

---

[7] Mr. Reed cites generally to Ms. Bova's deposition testimony. Ms. Bova's 125 page deposition transcript was submitted by Mr. Reed. "Judges are not like pigs, hunting for truffles buried in [the record]." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702-03 (7th Cir. 2010) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Because Mr. Reed did not cite specifically to admissible evidence to support his contention, we cannot credit it.

supervisor. [Dkt. No. 55 at 6; Bova Aff. ¶ 14; Compl. ¶ 8.] Mr. Reed's Superintendent position required a Bachelor's Degree, with a preference for a Master's Degree, minimum eight years of experience in corrections, and four years administrative experience related to Juvenile Detention. [Def. Ex C-1.]. Mr. Randall's Staff Trainer position required a High School Diploma with a preference for a Bachelor's degree and a preference for two to three years of experience. [Bova Aff. ¶ 14.] Detention Trainer and Superintendent are subordinate to different supervisors. [*Id.*] Mr. Randall was not similarly situated to Mr. Reed.

Mr. Reed also contends that he is similarly situated to Ms. Patterson. Yet, Mr. Reed provides no information about Ms. Patterson's job description, job standards, or experience, education, and other qualifications. Ms. Patterson is the Director of Finance (not the Superintendent of the MCJDC) and supervises only one person, her assistant. [Dkt. No. 50 at 18; Bova Aff. ¶ 15.] The Director of Finance and Superintendent are subordinate to different supervisors. [*Id.*]

Mr. Reed complains that Ms. Patterson used MCJDC's tables for her own personal garage sale and advertised that garage sale over MCJDC email. [Dkt. No. 54 at 13.] Mr. Reed cites only to a non-authenticated email, Exhibit 7. That email shows that *Mr. Reed* had granted permission to Ms. Patterson to borrow the MCJDC's tables. [Pltf. Ex. 6 (Mr. Reed stating "you are more than welcome to borrow the tables before [the 2nd Quarter Detention-wide meeting on May 16th].").][8]

---

[8] Mr. Reed also complains that although Ms. Patterson used MCJDC email to advertise her garage sales without response from Ms. Bova yet, when an African American employee, Barbara

Even more importantly, Mr. Reed has set forth no evidence that Ms. Patterson committed any workplace violation. No evidence exists that Ms. Patterson failed to meet Defendant's legitimate performance expectations, violated ethics codes, or violated the human resource manual and received a disparate treatment from that which Mr. Reed received. Like Mr. Randall, Ms. Patterson is not similarly situated to Mr. Reed.

Mr. Reed's *prima facie* case of discrimination requires a showing that Defendant "treated similarly situated employees of a different race more favorably." *Logan*, 259 F.3d at 639. Mr. Reed has not identified any employees similarly situated to him that Defendant treated any differently. Mr. Reed has not made a *prima facie* claim of discrimination.

**2. The Evidence Shows Mr. Reed Was Terminated for a Nondiscriminatory Reason.**

Defendant has set forth legitimate, nondiscriminatory reasons to terminate Mr. Reed – the results of Ms. Bova's investigation showing that he failed to fulfill the Superintendent job description and manage the MCJDC. There is no dispute that the Executive Committee charged Ms. Bova with investigating allegations of misconduct at the MCJDC. There is no dispute that Ms. Bova interviewed several employees who reported wrongful conduct and/or job performance failings on the part of Mr. Reed. There is no dispute that the Executive Committee met and without any mention or motivation by race agreed to terminate Mr. Reed's employment or otherwise allow him to resign. [Bova Aff.;

---

Epps, used her MCJDC email to advertise a performance at the Madame Walker Theatre, "she was chastised by Paige Bova Kervan." [Dkt. No. 54 at 5.] This is simply inaccurate. Ms. Epps copied Ms. Bova on her theatre email. Ms. Bova told *Mr. Reed* that the email was not an appropriate use of work email and *Mr. Reed* stated he would talk to Ms. Epps. Moreover, Ms. Patterson did not send her email to Ms. Bova. There is no evidence that Ms. Bova received Ms. Patterson's email and treated her differently than Ms. Epps.

Rothenberg Aff.] Mr. Reed bears the burden to show that Defendant's reasons for his termination were pretextual, or a lie.

Mr. Reed "must present evidence suggesting that the employer is dissembling." *Coleman*, 667 F.3d at 852. "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Id.* "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Id.*; *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888-89 (7th Cir. 2001) ("[Plaintiff] may make the requisite showing by providing 'evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'") (citation omitted). To meet this burden, Mr. Reed must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the Defendant's asserted reason "that a reasonable person could find [it] unworthy of credence." *Coleman*, 667 F.3d at 852. To survive summary judgment, Mr. Reed must show that Defendant has provided a "phony reason" for terminating his employment. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).

Mr. Reed points to only two pieces of evidence to support his argument that Defendant's basis for terminating him was pretextual: (1) that Defendant did not follow its own formal policy for progressive discipline with regard to Mr. Reed and (2) that "Judge Marc Rothenberg wrote Mr. Reed a letter of recommendation despite Mr. Reed's

termination." [Dkt. No. 54 at 15.] Neither of these arguments casts doubt on the veracity of Defendant's basis for terminating Mr. Reed's employment.

First, Mr. Reed has not pointed to any evidence of a "formal policy for progressive discipline" applicable to Mr. Reed's position as Superintendent of the MCJDC. Mr. Reed cites to Ms. Bova's deposition on pages 109-110; however, those pages do not mention any formal policy for discipline. [*See* Bova Dep. at 109-10.] No such policy is before the Court.

Second, Mr. Reed has not pointed to any evidence that "Judge Marc Rothenberg wrote Reed a letter of recommendation despite Reed's termination." [*See* Dkt. No. 54 at 15.] The email referenced by Mr. Reed indicates that Judge Rothenberg agreed to write a letter of recommendation "if resignation is the option [Mr. Reed chose]" and that Judge Rothenberg believed Mr. Reed's "operation and programming skills are exceptional." [Pltf. Ex. 13.] Mr. Reed did not resign. No evidence exists that Judge Rothenberg actually wrote a recommendation letter. Even so, Judge Rothenberg's comments related to Mr. Reed's "operation and programming skills" does not show Mr. Reed was trusted by his employees or that Mr. Reed had a good working relationship with Juvenile Detention's counterparts such as Juvenile Probation or that Mr. Reed did not violate ethical prohibitions. Stated differently, Judge Rothenberg's email does not show the Executive Committee's reason for terminating Mr. Reed's employment was a lie. In fact, Judge Rothenberg later confirmed the basis for the Executive Committee's decision in an affidavit. [*See* Rothenberg Aff. ¶ 7.]

Although Mr. Reed has denied the three ethical violations alleged by Defendant, this cannot save his claim. Specifically, Mr. Reed denied that Jonathan Jordan cut residents' hair and Mr. Reed's hair while working as the Youth Manager [Dkt. No. 54 at 3]; that Youth Manager Corey Smith performed mechanical work on a personal vehicle while working for the MCJDC [*Id.* at 4]; and that Mr. Reed received a discounted hotel rate of $33 per night for a Jacuzzi suite from a former employee's wife [*Id.*]. Mr. Reed did not dispute the findings of Ms. Bova's investigation with respect to other areas of his employment performance, Mr. Reed also did not dispute that these allegations were part of Ms. Bova's investigation for the Executive Committee's consideration at the time of Mr. Reed's termination. Mr. Reed's argument only suggests that Defendant's reason for terminating his employment was inaccurate or possibly unfair, but it does not establish that Defendant itself did not believe these bases to be true. The Court does not need to consider the credibility of the witnesses because Mr. Reed has not offered any specific evidence "from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth." [Dkt. No. 54 at 17 (citing *Gordon*, 246 F.3d at 889).] Mr. Reed has provided no evidence that Defendant is lying about the basis for Mr. Reed's termination. As a result, Mr. Reed has not satisfied his burden of proof.

**Conclusion**

Ms. Reed has failed to provide evidence from which a reasonable jury could conclude that he was performing to Defendant's legitimate expectations and that Defendant treated similarly situated employees of a different race more favorably than Mr. Reed.

19

Further, there is no evidence that Defendant's rationale for Mr. Reed's termination as performance-based was pretextual.

We therefore **GRANT** Defendant's Motion for Summary Judgment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: ___10/20/2014___

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Ameen R. Najjar
OFFICE OF CORPORATION COUNSEL
Ameen.Najjar@indy.gov

Beth Ann Garrison
OFFICE OF CORPORATION COUNSEL
beth.garrison@indy.gov

Joel S. Paul
RAMEY & HAILEY
joel@rameyandhaileylaw.com